UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 02-127-P-C |
| | ) |
| | ) |
| JUAN NAVARRO | ) |

### GOVERNMENT'S TRIAL BRIEF

**I.   Preliminary Statement.**

Juan Navarro is charged in a single-count indictment with having conspired with others to possess with intent to distribute cocaine base. The charge contained in the indictment is based on historical evidence showing that in the Summer and Fall of 2002, Navarro was a member of a group of men from Springfield, MA who regularly brought crack cocaine from that city to Sabattus, Maine where it was sold to local customers.

**II.   Anticipated Evidence.**

The theory of the alleged conspiracy is that Navarro conspired with the Massachusetts supplier of crack cocaine, with Maine crack dealers, and with approximately five Hispanic men who held and guarded the crack supply at a residence in Sabbattus. The government will call to the stand approximately eight cooperating co-conspirators who will describe Navarro's role in the conspiracy. The evidence will show that Navarro was a primary contact person whom the Maine dealers would contact when they needed to communicate with the Massachusetts supplier. Since Navarro spoke English, the Maine dealers could use him as a translator in their dealings with the Spanish speaking supplier and with the five Hispanic men who transported the crack form Massachusetts to Maine. The evidence will also show that for part of the period of the conspiracy, Navarro would act as the



driver in the organization, bringing the five Dominican men from Springfield to Sabbattus.

The evidence will also show that on November 25, 2002, a detention hearing was scheduled to be held in the magistrate's court in with respect to co-conspirators Terrero and Manolo-Feliz. Just before that hearing was to start, DEA agents learned that Juan Navarro and Kirbin Antonio Feliz were in the hallway on the first floor of the federal courthouse, apparently intending to attend the detention hearing. United States Marshals made a probable cause arrested of Navarro and, along with DEA agents Rousseau and LaChance, brought him into the courthouse lock-up for processing. The defendant made certain incriminating statements in the lock-up. The Court has entered an order suppressing some of those statements and allowing the admission in evidence of others. The government will introduce in evidence those statements that the Court has ruled are admissible.

### III.   Legal Issues - The Conspiracy Count

The defendant is charged with having conspired with others to commit the offense of possession with intent to distribute cocaine base in the Summer and Fall of 2002, in violation of 21 U.S.C. §§846and 841(a)(1). According to the government's theory of the conspiracy, there were approximately ten people with whom the defendant conspired. Approximately eight of those co-conspirators will testify for the government at trial.

#### A. Elements of a 21 U.S.C. § 846 Conspiracy

**1. The Agreement**

The essence of a conspiracy under 21 U.S.C § 846 is an agreement to commit a crime. United States v. Mena-Robles, 4 F.3d 1026, 1031 (1st Cir. 1993). The agreement does not need to be proven by direct evidence, but may be inferred from facts and circumstances of the case indicating a plan and common objective. United States v. Rivera-Santiago, 872 F.2d 1073, 1079 (1st Cir.

1989). The agreement may be either express or tacit, id., and may also be conditional. United States v. Anello, 765 F.2d 253, 262 (1st Cir. 1985).

### 2. Conspirator's Participation

The government does not need to prove that a conspirator was present or participated in all of the objectives of the conspiracy in order to establish his criminal responsibility. United States v. Garcia-Rosa, 876 F.2d 209, 223 (1st Cir. 1989). Instead, the individual may be involved in only a facet of the conspiratorial plan with the awareness that his actions were in furtherance of a larger enterprise. Rivera-Santiago, 872 F.2d at 1079. Moreover, an individual may be part of a conspiracy without being directly involved in the interstate trade of drugs or having detailed information about the conspiracy. Id. The conspirator's knowledge of the enterprise need not extend beyond an understanding of the "essential nature of the plan and his connection with it". Id.

### 3. Intent

The United States must prove that the defendants intended to agree and to commit the substantive offense that was the object of the agreement. Mena-Robles, 4 F.3d at 1031. Intent may be established by circumstantial evidence of an individual's actions which furthered the aims of the conspiracy. Garcia-Rosa, 876 F.2d at 223. Evidence permitting an inference that a conspiracy existed is sufficient to establish intent to commit the unlawful object of the conspiracy. United States v. Thompson, 533 F.2d 1006, 1010 (6th Cir. 1976).

The jury need not find that a defendant charged with conspiracy under Section 846 actually knew the exact illegality of the act he conspired to commit, or that the defendant knew or agreed upon every detail of the conspiracy. Rather, the government is required to establish beyond a reasonable doubt only that the defendant thought what he agreed to do was illegal and that it was

3

illegal in fact. Mena-Robles, 4 F.3d at 1032; see also United States v. Bradley, 455 F.2d 1181, 1188 (1st Cir. 1972).

IV. **Evidentiary Issues - Co-conspirator Statements.**

The government does not anticipate that any unusual or complicated evidentiary issues will be presented in this case. It is likely, however, that some of the government's cooperating witnesses will testify to statements made by others concerning the involvement of the defendant in the drug business. The government would offer such evidence as co-conspirator statements.

Statements made by a co-conspirator are admissible against a defendant as non-hearsay under Fed. R. Evid. 801(d)(2)(E). See United States v. McManaman, 606 F.2d 919, 927 (10th Cir. 1979). To admit such statements against a defendant, the Court must find by a preponderance of the evidence, "that the declarant and the defendant were members of a conspiracy when the hearsay statement was made, and that the statement was in furtherance of the conspiracy..." United States v. Petrozziello, 548 F.2d 20, 23 (1st Cir. 1977). See also, United States v. Martorano, 557 F.2d 1, 11 (1st Cir. 1977), cert. denied, 435 U.S. 922 (1978). In making that determination, the Court may consider hearsay including the challenged statement itself. Bourjaily v. United States, 483 U.S. 171, 175-176 (1987).

Co-conspirator statements may be admitted conditionally, prior to a demonstration that the defendant against whom they are offered participated in the scheme, so long as the existence of the conspiracy and the defendant's participation is established by the close of all of the evidence. Bourjaily v. United States, 483 U.S. at 176 ; United States v. Ciampaglia, 628 F.2d 632, 637-38 (1st Cir.), cert. denied, 449 U.S. 956 (1980); United States v. Fontanez, 628 F.2d 687, 689 (1st Cir. 1980). A final determination as to admissibility should be made on the record at the conclusion of

the defense evidence. United States v. Ciampaglia, 628 F.2d at 638. Until that time, however, the order of proof rests in the discretion of the trial court. United States v. Hathaway, 534 F.2d 386, 401 (1st Cir.), cert. denied, 429 U.S. 819 (1976).

## CONCLUSION

This trial brief has covered matters which the Government believes will be of assistance to the Court. The Government requests leave of Court to file other such memoranda of law as may be necessary or appropriate.

Dated at Portland, Maine this 23rd day of May, 2003.

                                                  Paula D. Silsby
                                                  United States Attorney

                                                  Jonathan R. Chapman
                                                  Assistant U.S. Attorney